IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| UNITED STATES OF AMERICA | ) | |
| --- | --- | --- |
| | ) | 09 CR 115 |
| v. | ) | Judge Virginia M. Kendall |
| | ) | |
| RONALD HADDAD, JR. | ) | |

## MEMORANDUM OPINION AND ORDER

A federal grand jury indicted Defendant Ronald Haddad, Jr. with 28 counts of mailing threatening communications in violation of 18 U.S.C. § 876(c) and two counts of transmitting threatening communications in violation of 18 U.S.C. § 875(c). Haddad now moves to dismiss the Superseding Indictment against him, alleging that the statutes charged are unconstitutionally overbroad and violate his First Amendment rights. For the reasons discussed below, Haddad's motion to dismiss is denied.

## BACKGROUND

Haddad was arrested and charged with sending numerous anonymous packages threatening various Chicago politicians and oil company executives in Texas and California between 2007 and 2009. The packages were sent in five groups from one of seven return addresses in Chicago. A majority of the packages contained letters including direct threats to kill or injure the recipients. Most of the packages also contained an unidentified white powder, an unknown brown granular substance, or a plastic bag filled with an undisclosed liquid. The last group of packages carried live shotgun shells attached to a "popper-style firecracker toy." Haddad was investigated after he sent two emails from a personal email account containing similar violent language to many of the same individuals who had previously received letters.

Based on this conduct, on February 9, 2009, Haddad was arrested pursuant to a criminal complaint. On March 16, 2011, a grand jury returned a 30-count Superseding Indictment charging Haddad with 28 counts of sending a letter containing a threat to injure through the United States Postal Service, in violation of 18 U.S.C. § 876(c), and two counts of sending a threatening communication via interstate commerce (email), in violation of 18 U.S.C. § 875(c).

## **DISCUSSION**

Haddad advances two arguments in support of his motion to dismiss: (1) the statutes are overbroad by criminalizing both protected and unprotected speech and (2) as applied in this case, the letters and emails constitute political hyperbole and not true threats. The Government contends existing case law demonstrates that because the statutes have been interpreted to prohibit only true threats, which are never constitutionally protected, there is no concern with overbreadth.

As a preliminary matter, Haddad's second contention that the letters and emails constitute political hyperbole as opposed to true threats such that dismissal is warranted has already been declared meritless by this Court. In its ruling denying Haddad's previous motion to dismiss Counts 29 and 30 of the Superseding Indictment, this Court determined that "[w]hether speech is a true threat, as the Government contends, or political hyperbole, as Haddad contends, is a question for the jury at trial, not the Court at the motion to dismiss stage." *See United States v. Parr*, 545 F.3d 491, 497 (7th Cir. 2008) (whether a defendant's statements are ultimately deemed threats is a question for the jury); *see also United States v. White*, 610 F.3d 956, 962 (7th Cir. 2010) (dispute of whether a posting was a solicitation or not was a dispute over the meaning, inferences, and intent that could be drawn from the facts for the jury to decide). Haddad's argument to dismiss the Superseding Indictment in its entirety fails for the same reasons his prior

motion to dismiss was denied. Whether these letters contain true threats or merely caustic political discussion is a question of fact for the jury to resolve.

The remaining issue to be decided is whether 18 U.S.C. § 875(c) and § 876(c) are unconstitutionally overbroad by penalizing both protected and unprotected speech. The first step in an overbreadth analysis is to construe the challenged statute, because it is impossible to determine whether a statute reaches too far without first knowing what the statute covers. *See United States v. Williams*, 553 U.S. 285, 293 (2008). Because of the wide-reaching effects of striking down a statute on its face, the overbreadth doctrine is "strong medicine" and must be employed with hesitation and "only as a last resort." *See New York v. Ferber*, 458 U.S. 747, 769 (1982) (quoting *Broadrick v. Oklahoma*, 413 U.S. 601, 613 (1973)). When considering an overbreadth challenge to a federal statute, a court should construe the statute to avoid constitutional problems if possible. *See Ferber*, 458 U.S. at 769 n.24 (citations omitted). Facial challenges to criminal statutes on overbreadth grounds are discouraged. *See Sabri v. United States*, 541 U.S. 600, 609 (2004).

The statutes under which Haddad has been charged have been construed to prohibit only true threats, as opposed to political hyperbole. *See Watts v. United States*, 394 U.S. 705, 708 (1969). Haddad argues that unless the statutes are construed to also include an element of specific intent to threaten on behalf of the sender of the communications, the statutes are overbroad both facially and as applied to him. Haddad rests his argument on the reasoning found in *Virginia v. Black*, 538 U.S. 343 (2003):

> "True threats" encompass those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals…The speaker need not actually intend to carry out the threat. Rather, a prohibition on true threats "protect[s] individuals from the fear of violence" and "from the disruption that

3

fear engenders," in addition to protecting people "from the possibility that the threatened violence will occur."

*Black*, 538 U.S. at 359-60 (quoting *R.A.V. v. City of St. Paul*, 505 U.S. 377, 388 (1992). Haddad interprets the Court's inclusion of the phrase "a serious expression of an intent" in its definition of a true threat to mean that the speaker's intent must be a part of the analysis. Haddad further argues that the Seventh Circuit adopted such a subjective intent inquiry in true threat analysis. *See Parr*, 545 F.3d at 491 ("It is more likely…that an entirely objective definition [of true threat] is no longer tenable…We need not resolve the issue here.") Haddad's contention demands too much from the statement in *Black* and mischaracterizes the language found in *Parr*.

Traditionally, the law in this and most other circuits has been the opposite of Haddad's approach. An objective "reasonable person" test has been applied, as opposed to a subjective intent analysis of the speaker. This inquiry asks whether a reasonable speaker would understand that his statement would be interpreted as a threat or alternatively, whether a reasonable listener would interpret the statement as a threat. *See, e.g., United States v. Stewart*, 411 F.3d 825, 827-28 (7th Cir. 2005) (whether a statement constitutes a true threat is an objective inquiry where guilt is not dependent upon "what the defendant intended, but whether the recipient could reasonably have regarded the defendant's statement as a threat") (quoting *United States v. Schneider*, 910 F.2d 1569, 1570 (7th Cir. 1990)); *United States v. Fuller*, 387 F.3d 643, 646 (7th Cir. 2004) (a communication is a true threat if "a reasonable person would foresee that the statement would be interpreted by those to whom the maker communicates the statement as a serious expression of an intention to inflict bodily harm…") (quoting *Roy v. United States*, 416 F.2d 874, 877 (9th Cir. 1969)).

Haddad's assertion that the reasoning found in *Parr* shifts true threat analysis is unavailing. Although the Seventh Circuit addressed *Black* and indicated a possible change in the

4

definition of a true threat in the future, it explicitly did not resolve the issue. *See Parr*, 545 F.3d at 491. Moreover, since *Parr*, a majority of courts that have considered the issue have maintained the objective test as opposed to considering the subjective intent of the speaker. *See, e.g., United States v. Martinez*, 736 F.3d 981, 988 (11th Cir. 2013) (Section 875(c) does not require the government to prove a defendant specifically intended his or her statements to be threatening); *United States v. Mabie*, 663 F.3d 322, 333 (8th Cir. 2011) (government need only prove that a reasonable person would have found defendant's communications conveyed an intent to cause harm or injury); *United States v. Beale*, 620 F.3d 856, 865 (8th Cir. 2010) (a true threat is "a statement that a reasonable recipient would have interpreted as a serious expression of an intent to harm or cause injury to another") (quoting *Doe v. Pulaski County Special Sch. Dist.*, 306 F.3d 616, 624 (8th Cir. 2002)); *United States v. Armel*, 585 F.3d 182, 185 (4th Cir. 2009) (statement constitutes true threat if ordinary reasonable recipient familiar with the context would interpret that statement as a threat of injury); *United States v. Musgrove*, 845 F. Supp.2d 932, 945 (E.D. Wis. 2011) (applying objective inquiry from perspective of listener in true threat analysis).

This Court finds the stance taken by the majority of courts since *Black* and *Parr* to be persuasive and agrees that an objective test is most desirable in true threat cases, especially because the purpose of the prohibition on true threats is to "protect individuals from the *fear* of violence" and "from the disruption that *fear* engenders." *See Black*, 538 U.S. at 360 (quoting *R.A.V.*, 505 U.S. at 388) (emphasis added). Because the statutes are designed to protect individuals from apprehension, the subjective intent of the speaker cannot be of paramount importance. *See, e.g., New York ex rel. Spitzer v. Cain*, 418 F. Supp.2d 457, 479 (S.D.N.Y. 2006).

5

Construed in such a manner, the statutes do not sweep up a "substantial amount of protected expressive activity," *see Williams*, 553 U.S. at 297, because they apply only to true threats. True threats always fall outside the ambit of First Amendment protections, *see R.A.V.*, 505 U.S. at 388, because they inflict injury "by their very utterance." *See Black*, 538 U.S. at 359 (quoting *Chaplinsky v. New Hampshire*, 315 U.S. 568, 572 (1942)). Because true threats, however communicated, are categorically unprotected beneath the First Amendment, the statutes do not chill constitutionally protected speech. This construction of Sections 875 and 876 limits their reach only to unprotected true threats, making it patently impossible for protected activity to be punished. Therefore, no constitutional overbreadth concern is found. Accordingly, Haddad's motion to dismiss is denied.

## CONCLUSION

For the foregoing reasons, Haddad's motion to dismiss the indictment is denied.

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: April 16, 2014